UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| APRIL NICOLE COLLINS,<br><br>      Plaintiff,<br><br>V.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | CIVIL ACTION NO. 6:16-06-KKC<br><br><br>MEMORANDUM OPINION & ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. [DE 11 & 12]. The Plaintiff, April Nicole Collins, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief from an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide that the administrative law judge ("ALJ") must follow a five-step sequential process in determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

1

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The burden is on the claimant to satisfy the first four steps of the analysis. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) (citing *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 774 (6th Cir. 2008)). Thereafter, the burden shifts to the Commissioner at step five to show "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Born March 13, 1977, April Collins was 33 years old when she allegedly became disabled and 37 years old at the time of the Commissioner's final decision that is now before this Court. [TR 123]. She is married and lives with her husband and daughter. [TR 42]. Collins graduated from high school and completed one year of college before joining the

workforce. [TR 161]. In the past, she worked as a physical therapy technician, a receptionist, a mail handler, a bank teller, and a retail sales clerk. [TR 161]. She alleges disability due to conditions related to her left knee, which include lateral meniscus and anterior cruciate ligament tears, anterior cruciate ligament and lateral meniscus transplants, and a knee replacement. [TR 160].

Collins filed her application for DIB on December 6, 2012, alleging an onset date of October 11, 2010. [TR 49]. Her application was denied initially on January 8, 2013, and again on reconsideration on March 13, 2013. [TR 59, 60]. Collins then filed a timely request for a hearing before an ALJ. [TR 85]. ALJ Todd Spangler conducted a hearing on March 22, 2013, in Middlesboro, Kentucky. [TR 25]. Collins attended the hearing, accompanied by her lawyer, at which she testified on her own behalf. [TR 25]. Jo Ann Bullard, an impartial vocational expert, also testified at the hearing. [TR 25]. Thereafter, the ALJ issued a decision on June 5, 2014, denying benefits to Collins. [TR 13].

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R § 404.1520, and found as follows. First, the ALJ determined that Collins had not engaged in substantial gainful activity since her alleged onset date of October 11, 2010. [TR 15]. Second, the ALJ classified Collins as suffering from a chronic left anterior cruciate ligament tear, status post left knee arthroplasty, arthroscopy and arthrocentesis, with postoperative evidence of early osteoarthritis—all constituting, when combined, "severe" impairments as defined in 20 C.F.R. § 404.1520(c). [TR 15]. Third, the ALJ concluded that Collins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 16].

Before moving to step four, the ALJ reviewed the record to determine Collins' residual functional capacity (RFC). [TR 16]. RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the

3

claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Claimant's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529. The ALJ also considered the relationship between Collins and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entirety of evidence on the record; medical specialization; and other opinion evidence. 20 C.F.R. §§ 404.1527, 416.927; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Based on the medical evidence presented, the ALJ determined that Collins has the RFC to perform light work, with the following limitations: she can stand/walk for no more than four hours in an eight hour day and sit for about six hours; she can perform no more than stooping, kneeling, crouching or crawling and no more than occasional pushing/pulling with the left lower extremity; she cannot climb ladders, ropes or scaffolds; she can perform no more than frequent climbing of ramps or stairs; and she must avoid exposure to vibration and hazards. [TR 16].

After establishing Collins' RFC, the ALJ continued to the fourth step, where the ALJ found that Collins is capable of performing past relevant work as a receptionist, work that did not require the performance of work-related activities precluded by Collins' RFC. [TR 20]. The ALJ based this determination on the vocational expert's testimony that a hypothetical individual with Collins' vocational factors and RFC could perform her past relevant work as

4

a receptionist. [TR 21]. Given this finding, the ALJ concluded that Collins was not disabled. [TR 21].

The ALJ's decision that Collins is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on November 12, 2015. Collins has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. DISCUSSION

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

Collins raises two challenges to the ALJ's findings. The first is a generalized claim that the ALJ's decision was not supported by substantial evidence. [DE 11-1, at 2]. Such an objection is not "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Surgener v. Colvin*, No. 6:15-cv-103-KKC, 2016 WL 4771070, at *2 (E.D. Ky. Sept. 13, 2016) (quoting *Wyatt v. Barnhart*, 190 F. App'x 730, 732

(10th Cir. 2006) (quotations and citation omitted)). This first claim is better understood as ascribing general error to a more specific objection found in Collins' second argument: that the ALJ failed to assign greater weight to her medical source opinions in assessing her RFC. In other words, Collins objects to the reasonableness of the ALJ's RFC finding based on what she argues was an improper evaluation of the medical sources presented. This objection comes in two parts.

A.

In objecting to the reasonableness of the ALJ's RFC finding, Collins first mounts a narrow attack against the ALJ's determination that Dr. Malkani, a physician who completed Collins' medical source statement or Medical Assessment of Ability to Do Work-Related Activities, did not qualify as a treating physician. [DE 11-1, at 9] ("The ALJ afforded [his] assessment little weight and opined that Dr. Malkani was not a treating physician. This was in error . . . .").

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, [the Court] must firm determine the medical source's classification. *Ealy v. Comm'n of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). As a general matter, a treating physician's opinion may be entitled to controlling weight when it is "well-supported by clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). However, even a treating physician's opinion may be given less weight when it is not supported by the evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). But, only a treating source's opinion is subject to the scrutiny of the treating physician rule outlined in 20 C.F.R. § 404.1527(c)(2). When the opinion does not garner

6

controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors that tend to support or contradict the opinion. § 404.1527(c)(2)(i)–(ii); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

On December 5, 2012, Dr. Malkani offered a medical source statement on Collins' condition. [TR 319-320]. At the time, Dr. Malkani was a part of the SHEA GROUP, the group of physicians Collins saw for her knee problems. In that assessment, Dr. Malkani opined that Collins could not lift more than 5 to 10 pounds and that she could not stand/walk or sit for more than 1 to 2 hours total per day, with no more than 20 minutes of standing, walking, or sitting continuously. [TR 319]. At the hearing, vocational expert Jo Ann Bullard testified that had a hypothetical individual who needed to sit and stand at will—much like the restrictions described by Dr. Malkani—would be disabled. [TR 21]. The ALJ did not consider Dr. Malkani's opinion to be that of a treating physician and gave the medical opinion "negligible weight" in evaluating Collins' RFC. [TR 20]. Collins argues that Dr. Malkani's assessment was entitled to greater weight because (1) Collins testified that she was seen by Dr. Malkani on "several times," (2) he was poised to be the physician in charge of Collins' continued treatment; and (3) the record contains at least one record documenting Dr. Malkani was consulted in Collins' case. [DE 11-1, at 9].

However, neither reversal nor remand is warranted here as a result of the ALJ's finding that Dr. Makani's was not a treating physician whose opinion is entitled to controlling weight. The Sixth Circuit recently explained, "[a] physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or

7

evaluation required for [the] medical condition.'" *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. July 13, 2015) (quoting 20 C.F.R. § 404.1502; citing *Smith*, 482 F.3d at 876).

A review of the record shows that the ALJ's determination was appropriate and that the ALJ did not err in determining that Dr. Malkani is not a treating physician.[1] [TR 20]. Medical records show that Dr. Malkani was consulted in one instance by Dr. Samujh [TR 321], but the rest of the objective record is otherwise completely empty of any indication Dr. Malkani treated Collins directly before filling out her medical source statement. Collins did testify that she saw Dr. Malkani "three to four times" [TR 41], but the objective medical evidence failed to substantiate the occurrence of these visits. The ALJ considered both of these facts. Moreover, the ALJ did not discount Collins' testimony completely, instead he stated that "even if she had submitted [medical evidence to substantiate that she has seen Dr. Malkani on a number of occasions], having seen the claimant on only a small handful of occasions is not sufficient to support the severity of the limitations contained in this opinion given the longitudinally underwhelming clinical examination findings and most recent MRI report." [TR 20 n.3]. This pattern of treatment, even giving Collins' contradicted testimony the benefit of the doubt, does not constitute an "ongoing treatment relationship" under Social Security regulations, *see, e.g., Smith*, 482 F.3d at 876 (quoting 20 C.F.R. § 404.1502), for Dr. Malkani to be considered a treating physician. *See Mireles v. Comm'r of Soc. Sec.*, 608 F. App'x 397, 398 (6th Cir. July 24, 2015) (per curiam) (no error in finding doctor not treating source when saw claimant no more than three times).

---

[1] As a threshold matter, then, any argument implying that the ALJ was required to give "good reasons" for discounting Mr. Malkani's opinion is irrelevant because "this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citation omitted) (emphasis in original).

8

Moreover, there is no merit to Collins' argument that Dr. Malkani should be considered a treating physician based on the fact "that he was the expert in charge of full knee replacements [and] was poised to be the physician in charge of the next step." [DE 11-1, at 9]. The relevant inquiry is not whether Dr. Malkani might have become a treating physician in the future, but "whether [he] had the ongoing relationship with [Collins] to qualify as a treating expert *at the timer he rendered his opinion.*" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir.2006) (emphasis in the original). At the time of the December medical source statement, as the ALJ stated, there is little to no evidence indicating that Dr. Malkani ever treated or examined Collins. While it may be true that Dr. Malkani may have assumed a greater role in Collins' future care, there is substantial evidence to support the ALJ's finding that Dr. Malkani was not a treating physician at the time he examined Collins. Therefore, there is no error in the ALJ's decision to not consider Dr. Malkani a treating physician and to not give his opinion controlling weight.

B.

Collins focuses her appeal on the ALJ's RFC determination, arguing that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly evaluated the medical source opinions in the record. No matter Dr. Malkani's classification, the ALJ was still bound to consider his opinion, along with all relevant evidence in the record, to determine Collins' RFC. See 20 C.F.R. § 404.1527(b); § 416.927. After a review of the record, the Courts finds that the ALJ fulfilled this duty. The ALJ reasonably considered the total record, including all objective medical evidence, Collins' medical sources and her subjective testimony, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and made a reasonable RFC determination in concluding that Collins could perform her past work as a receptionist.

The responsibility for determining the RFC is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1546(c) ("[T]he

9

administrative law judge . . . is responsible for assessing your residual functional capacity."). "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility. *See* SSR 96–5p, 1996 WL 374183, at *3; SSR 96–8p, 1996 WL 374184, at *5. No medical source opinion is conclusive by itself on this issue. *See* SSR 96-5p, 1996 WL 374183, at *2, 4-5. Similarly, a claimant's subjective complaints of pain or other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a). The claimant retains the burden of establishing his residual functional capacity limitations. *See Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citation omitted) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . . The claimant, however, retains the burden of proving his lack of residual functional capacity."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

The ALJ considered all relevant evidence of record and afforded "significant weight" to Dr. Gedmark's, the state agency medical consultant, opinion. [TR 20]. Collins argues that the ALJ should have given Dr. Malkani's opinion "controlling weight as a treating physician." [DE 11-1, at 9]. As stated above, the ALJ's decision to not treat Dr. Malkani's opinion as one of a treating physician was not in error. To Collins' more specific argument that Dr. Malkani's opinion deserved controlling weight, the Court finds that the ALJ did not err in assigning Dr. Malkani's opinion "negligible weight." The ALJ provided the following reasonable explanation:

10

>I have also considered the December 2012 opinion offered by Dr. Arthur Malkani (Exhibit 6F), but I assign it negligible weight. In doing so, I note that there is absolutely no evidence indicating that Dr. Malkani has ever treated or examined the claimant. Instead, it appears the bulk of her orthopedic treatment has been with Dr. Caborn with a handful of visits being conducted by Dr. Shea and Dr. Samujah.

[Tr. 20]. Without a record of treatment, it was not an error to assign little weight to any opinion Dr. Malkani offered.

Even more so, the ALJ not did limit his decision to give little weight to Dr. Malkani's opinion solely to the doctor's lack of treatment record, but the ALJ also considered what the opinion said in light of the record as a whole. He noted: "even if [Collins] had submitted [medical evidence to substantiate that she has seen Dr. Malkani on a number of occasions], having seen the claimant on only a small handful of occasions is not sufficient to support the severity of the limitations contained in this opinion given the longitudinally underwhelming clinical examination findings and most recent MRI report." [TR 20 n.3]. In making this comparison, the ALJ discussed the relevant medical evidence, including the longitudinal record, including Collins' various clinical examinations that "failed to document any significant abnormalities" [TR 18] and the examination findings and treatment notes of Dr. Samujh and Dr. Caborn. [TR 18]. The ALJ was appropriately concerned by the absence of objective medical evidence to support the degree of limitations as argued by Collins and suggested by Dr. Malkani and was therefore obligated to consider that the objective medical evidence supported Dr. Gedmark, the state agency medical consultant. 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies, including conflicts between a claimant's statements and the medical record).  Here, the ALJ justifiably found that the longitudinal record did not support the limitations Dr. Malkani gave.

The ALJ also based his decision not to give controlling weight to Dr. Malkani's opinion on what he saw as discrepancies between the opinion and Collins' own telling of her

11

limitations. To name a few: Dr. Malkani's opinion indicated that Collins could lift no more than 5 pounds occasionally; Collins indicated she could lift 5 to 10 pounds. [TR 20]. Dr. Malkani's opinion indicated that Collins could not walk/stand or sit for more than 1 to 2 hours per day and no more than 20 minutes continuously; Collins testified that was able to travel longer distances (including to the Social Security Disability hearing), and the ALJ observed that Collins showed no discernable signs of pain or discomfort throughout her hearing. [TR 20]. Given these reasons, the ALJ was, again, justified in assigning little weight to Dr. Malkani's findings. *See* 20 C.F.R. § 404.1527(c); *see also Walters v. Comm'r Soc. Sec*, 127 F.3d 525, 529–530 (6th Cir. 1997); *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints unsupported by objective findings).

"State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). "In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p). For all the reasons stated above, the Court deems that it was appropriate it in this case to assign great weight to Dr. Gedmark's opinion and that the ALJ's decision to do so was supported by a review of the complete record. Therefore the Court cannot say that the ALJ's determination of Collins' RFC was in error, as it was supported by substantial evidence.

C.

There is one last matter to tie up. Collins argues that the ALJ erred when he failed to assign greater weight to the opinions of Collins' physical therapists. Specifically, Collins argues that her physical therapy notes deserved greater weight in considering whether she

was able to work because "there is no reason to doubt [the therapists' opinion that] claimant is unable to work." [DE 11-1, at 8]. To the extent that such an argument carries with it the implication that the ALJ did not consider the physical therapy treatment notes in his analysis of Collins' RFC, that argument is unfounded. The ALJ cited various progress notes in his analysis of Collins' subjective complaints. [TR 17–19].

The Court construes Collins' real argument to be that the ALJ erred in not adopting the physical therapists recommendation that Collins is unable to work. Such an argument is misplaced for two reasons. First, the RFC determination and whether a claimant has the ability to work is a decision reserved only for the Commissioner. *See Nejat*, 359 F. App'x at 578. Second, physical therapists are not accepted medical sources under the Social Security regulations. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists), *with* 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 404.1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir.2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source). Because physical therapists are not considered acceptable medical sources under the regulations, the ALJ was not required to give any special deference to the physical therapist's RFC findings. Here, the ALJ addressed the physical therapists' opinions, and used the findings to evaluate Collins' subjective complaints, but discounted them when determining her RFC because the findings were not supported by objective evidence and because physical therapists are not accepted medical sources. [TR 20]. Consequently, the ALJ's conclusion to reject the physical therapists'

findings is based upon a correct legal standard and is supported by substantial evidence. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009).

## IV. CONCLUSION

In this case, the ALJ considered the entire record [TR 18-20], including the medical source opinions and Collins' subjective complaints in the making of Collins' RFC determination, which found that Collins retained the capacity to perform her past work as a receptionist despite her impairments, and ultimately determined that Collins was not disabled under the Act. The ALJ did not err in weighing the opinion evidence provided by the various medical sources on record, and the RFC determination was supported by substantial evidence. Therefore, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1) that Plaintiff's Motion for Summary Judgment (DE 11) is **DENIED** and

2) that the Commissioner's Motion for Summary Judgment (DE 12) is **GRANTED**.

3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4) A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated March 22, 2017.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY